**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

CARRIE A. MCMELLON, et al.,

                 Plaintiffs,

v.                                    CIVIL ACTION NO.  3:00-0582

UNITED STATES OF AMERICA, et al.,

                 Defendants.

**ORDER**

Pending before the court is the parties' joint motion for vacatur pursuant to Federal Rule of Civil Procedure 60(b)(6).  For the following reasons, the motion is **DENIED**.

**I.**      **Background**

The question before the court in this already-decided case is whether the published opinion and order, as well as the findings of fact and conclusions of law made at the conclusion of the bench trial, should be vacated to facilitate the parties' settlement on appeal.  More generally, the question is whether vacatur of a final decision is warranted when the case was fully litigated, briefed, and argued.  *Neumann v. Prudential Ins. Co.*, 398 F. Supp. 2d. 489, 490 (E.D. Va. 2005).

I will summarize the pertinent facts to frame the vacatur question presented.  On August 5, 1999, the plaintiffs were injured when their personal watercrafts went over the Robert C. Byrd Locks and Dam on the Ohio River.  The dam is operated by the United States Army Corps of Engineers ("Corps") and is owned by the United States.  Although unfamiliar with the section of the river on which they were traveling, the plaintiffs had not consulted any navigation charts, chartlets, maps,

publications, or other navigational aids.  As they traveled towards the dam, the plaintiffs failed to see any of the warning signs posted along the river.  They contend that the signs failed to signal the danger of the dam to watercraft traveling in the middle of the river channel and that some of the warning signs were obscured by bushes and trees.

In 1993, the Corps installed warning buoys on the upstream side of the dam.  In 1995, however, the Corps removed the buoys after deciding that they posed a safety threat to vessels that were working on an extensive rehabilitation project on the dam.  At the time of the accident, the upstream buoys had not been replaced and the signs along the river bank were the only warning to boaters approaching the dam.

The plaintiffs, alleging negligence on the part of the United States and the Corps, sued under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. § 742 (2000), and filed their complaint in the United States District Court for the Southern District of West Virginia on September 10, 2000 [Docket #1]. On September 7, 2001, the United States filed a motion to dismiss, or in the alternative, for summary judgment [Docket #20], which this court granted on April 5, 2002.  *McMellon v. United States*, 194 F. Supp. 2d 478 (S.D. W. Va. 2002).  The plaintiffs appealed the dismissal to the Fourth Circuit Court of Appeals. In a panel opinion, the Fourth Circuit found that this court erred when it found that the United States did not have a duty to warn the plaintiffs of the dam's presence downstream. *McMellon v. United States*, 338 F.3d 287, 297-303 (4th Cir. 2003).  The circuit court then reheard the appeal en banc, found that the SIAA contains an implied discretionary function exception to its general waiver of sovereign immunity, and vacated the opinion of the panel.  *McMellon v. United States*, 387 F.3d 329 (4th Cir. 2004) (overruling *Lane v. United States*, 529 F.2d 175 (4th Cir. 1975)).  The case was remanded to this court for a ruling consistent with that finding.  On October

18, 2005, this court issued a memorandum opinion and order denying the United States' motions for dismissal and for summary judgment.[1] Following a bench trial, this court issued findings of fact and conclusions of law in an unpublished opinion issued on July 26, 2006. *See McMellon v. United States*, 2006 WL 2099211 (S.D. W. Va. July 26, 2006). I held that the lack of adequate signage combined with the absence of any warning lights made the dam's warning system inadequate. I thus found that inadequacy of the dam's warning system directly and proximately caused the plaintiffs to topple over the dam.

## II.    Analysis

Federal Rule of Civil Procedure 60 governs whether a party may obtain relief from a final judgment. Rule 60(b)(6) applies in this case. While Rule 60(b)(1)-(5) enumerate specific narrow circumstances in which relief from judgment can be granted, Rule 60(b)(6) is a catchall provision that permits courts to reopen a final judgment for "any other reason justifying relief from the operation of the judgment." In this circuit, Rule 60(b)(6) has been interpreted narrowly, granting relief only under "extraordinary circumstances" *See, e.g.*, *Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 n.2 (4th Cir. 2000). The decision to grant or deny a Rule 60(b)(6) motion is committed to the court's discretion. *See Plaut v. Spendthrift, Inc.*, 507 U.S. 380, 393 (1993).

The parties' motion relies solely on the fact that they have reached a settlement conditioned upon the court granting vacatur. They note that vacatur is a recognized resolution in the Fourth Circuit. They fail to mention, however, that it is settled in this circuit that where, as here, a case has

---

[1] Complete analysis of the legal issues in this case can be found in an earlier published opinion. *See McMellon v. United States*, 395 F. Supp. 2d 422 (S.D. W. Va. 2005).

been fully briefed, argued, and decided there is a general presumption against vacatur. *See Valero*, 211 F.3d at 118. The parties' reason for vacatur falls short of overcoming that presumption.  As stated by the Supreme Court, "It should be clear from our discussion . . . that exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994).

Settlements are desirable, yet are not the sole concern of the judicial system. As Judge Easterbrook explained, "It is hard to be against settlement. Any disposition that the parties to the litigation unanimously endorse has much to be said for it. . . . When the parties' bargain calls for judicial action, however, the benefits of the settlement to the parties are not the only desiderata." *In re Mem'l Hosp.*, 862 F.2d 1299, 1302 (7th Cir. 1988). Judge Easterbrook further explained, "When a clash between genuine adversaries produces a precedent, the judicial system ought not allow the social value of that precedent to be a bargaining chip in the process of settlement. The precedent, a public act of a public official, is not the parties' property." *Id.*

When deciding whether to consent to a motion for vacatur, courts look not only to the interests of the parties but also look to the public interest. The court must consider minority interests, judicial integrity, and the expenditure of judicial resources, among other things.

One role of the judiciary is to protect minority interests. Freely granting vacatur hurts one-time players in the legal system while benefitting institutional litigants. Vacatur is requested almost exclusively by repeat-player litigants who have the greatest incentive to remove adverse precedent from the books. The repeat player, as opposed to the one-shot litigant, is principally concerned with the long-range effects of the judgment. Daniel Purcell, Comment, *The Public Right to Precedent: A Theory and Rejection of Vacatur*, 85 Cal. L. Rev. 867, 868 (1997).  These institutional litigants

can afford to play the odds and may be indifferent with respect to any individual claim.  Vacatur may allow majority interests, in the form of institutional litigants, to exert an undue influence on the shape of rules for future conduct.  Howard Slavitt, *Selling the Integrity of the System of Precedent: Selective Publication, Depublication, and Vacatur*, 30 Harv. C.R.-C.L. L.  Rev. 109, 118 (1995).  In this case, one of the parties requesting vacatur is the ultimate repeat player, the federal government.

The public has an interest in the integrity of the judiciary. Public confidence in the judiciary hinges in part on the faith that procedural rules treat parties equally. Andrew Tutumello, Case Comment, *Shopping for Legal Precedent Through Settlement-Related Vacatur:* U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 115 S. Ct. 386 (1994), 1 Harv. Negot. L. Rev. 213, 221 (1996).   This confidence in equal treatment is even more important when one of the parties is the government.  The public must not feel that the government can shape the law to its favor by buying settlements that erase unfavorable precedent.  Once a decision is made to commit society's resources to resolving the dispute and after an opinion is issued, it is more appropriate to think of the judgment as part of society's rules. Slavitt, *supra*, at 138.  Final judgments are legal truths that, once spoken, ought not be trivialized by converting them into bargaining chips. Tutumello, *supra*, at 222.The executive branch of government should respect the judiciary and should be reluctant to use requests for vacatur as a settlement strategy.

Judicial economy is not achieved where, as here, substantial judicial time has been spent and resources devoted to a resolution of the dispute. The strong policy in favor of encouraging settlements is insufficient to justify vacatur in this case. As the Supreme Court has recognized, "[s]ome litigants, at least, may think it worthwhile to roll the dice rather than settle in the district court . . . if, but only

if, an unfavorable outcome can be washed away by a settlement-related vacatur." *U.S. Bancorp Mortgage Co.,* 513 U.S. at 28. In other words, if post-judgment vacatur were a readily available option, parties would be less likely to settle at earlier stages of the controversy. Thus, the public's interest in the private settlement of this dispute is not strong in this case, as this settlement creates a disincentive for prejudgment settlements.

The Supreme Court stated the public's interest well in *Bancorp*, explaining that "Judicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur." *Bancorp*, 513 U.S. at 27 (citing Justice Stevens' dissent in *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993)).  I **FIND** that the public interest would not be served by vacatur in this case.  I therefore **DENY** the joint motion for vacatur.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.


ENTER:        April 2, 2007


_____
JOSEPH R.  GOODWIN
UNITED STATES DISTRICT JUDGE